UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL YEBOAH-SEFAH, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Civil Action No. 04-10125-RWZ |
| ) | |
| EDWARD FICCO, ) | |
| ) | |
| Respondent. ) | |

**SECOND SUPPLEMENTAL APPENDIX**

(J)  Petition for Rehearing

# TAB J

# PEPPARD & LITTMAN, P.C.
### ATTORNEYS-AT-LAW

KENNETH G. LITTMAN *

ANDREW B. PEPPARD

* Admitted in Massachusetts & Rhode Island

251 CHERRY STREET
FALL RIVER, MASSACHUSETTS 02720
508-675-6900  FAX 508-678-1329

26 OCEAN AVENUE
JAMESTOWN, RHODE ISLAND 02835
401-847-9992

*Please Respond to Fall River Office*

February 3, 2003

Chief Justice Margaret H. Marshall
Supreme Judicial Court
1300 New Courthouse
Boston, MA 02108

RE: Commonwealth
vs. Henry H. Boateng
No: SJC-07317
Petition For Rehearing of Opinion Dated January 21, 2003

Dear Chief Justice Marshall:

Pursuant to Rule 27 of the Massachusetts Rules of Appellate Procedure, the defendant herein is requesting a rehearing of his appeal due to the Supreme Judicial Court's failure to adequately consider certain points of law or fact in its opinion dated January 21, 2003. In particular, the defendant submits the following as a basis for a rehearing:

I. **Due To The Trial Judge's Failure To Conduct A Voir Dire On The Issue Of The Voluntariness Of The Defendant's Statements, The Convictions Should Be Reversed And A New Trial Granted**

This Court agreed that the trial judge erred in failing to conduct a voir dire related to the voluntariness of the defendant's statements to the police, acknowledging that the defendant's lack of criminal responsibility defense "should have alerted the judge to his duty to conduct a

-1-

voluntariness hearing before his statements to the police were used against him". See Commonwealth v. Vasquez, 387 Mass. 96, 99 (1982) quoting Commonwealth v. Chung, 378 Mass. 451, 457 (1979). However, the Court then went on to conclude that such failure by the trial judge was excusable since it "did not create a substantial likelihood of miscarriage of justice"[1]. The Court set forth several reasons that there was "no substantial likelihood of a miscarriage of justice" created by the trial judge's failure to conduct a voluntariness hearing. Its' reasoning overlooks the fact that each mental health professional called to testify whether at trial or during the hearing on the motion for a new trial acknowledged that the defendant suffered from a major mental illness at the time of the assaults. See Commonwealth v. Cole, 380 Mass. 30, 40-41 (1980). ("Evidence of insanity usually raises issue of voluntariness"). Also ignored was the critical importance of these statements to the Commonwealth's case against the defendant as well as the trial court's clear error in its instruction to the jury on the "voluntariness of the defendant's statements"[2].

The Court pointed to the "admissible observations" of Worcester police officers Genduso and Lombardi regarding the defendant's "calm demeanor and actions after the assaults" to justify its opinion that even if specific statements made by the defendant were excluded any hearing would likely "have resulted in the conclusion that [the defendant's] statements to the police were voluntary". The Court reasoned that "the statements, although in part corroborative of sanity,

---

[1] The defendant reiterates his claim that the motion judge considered this as well as other unobjected to errors on their "substantive merits" resurrecting these issues and triggering the "prejudicial error" standard and not the substantial miscarriage of justice standard of review. See Commonwealth v. Acevedo, 427 Mass. 714, 715 (1998).

[2] The defendant discussed this erroneous instruction in his brief on pages 115-118 but this Court failed to rule on this issue.

were not central to the case, which turned largely on Moore's description of [the defendant's] attacks and the testimony of the experts regarding mental illness". The defendant agrees that the statements could be viewed as corroborative of sanity and that the case mostly "turned" on a description of the assaults and the psychiatric testimony regarding criminal responsibility. However, the defendant contends that contrary to this Court's minimization of the importance of the defendant's statements, they formed a central part of the case against him.

A careful review of the trial testimony shows the statements were critical to the Commonwealth's successful effort to undermine the defense of lack of criminal responsibility. Most importantly, Dr. Marc Whaley, the Commonwealth's medical expert, relied heavily on the defendant's statements to conclude that the defendant was "goal-directed in his behavior", "had the capacity to appreciate the wrongfulness of his conduct" and did not meet the McHoul standard for lack of criminal responsibility. (Tr. IX, 121-122, 137-138, 199, 205, 206-207). Specifically, Dr. Whaley testified that the defendant's conversation with Enid Hall, and his conversations with the police were indicative of "goal-directed behavior" and that the defendant's behavior was more consistent with achieving a certain goal, i.e., "namely, to essentially avoid responsibility" for his actions, as well as consistent with having the capacity to appreciate the wrongfulness of his conduct. (Tr. IX, 121-122). He also testified that the defendant's purported conversations with the police after the attacks seemed to be "goal-directed behavior", or actively designed to absolve and decrease the defendant's responsibility for the death of the child. (Tr. IX, 122-123). This testimony provided the core of the Commonwealth argument that the defendant was criminally responsible for his child's death.

The importance of these statements is further demonstrated by the manner in which the

prosecutor used the defendant's statements in his closing argument to show that the defendant could think "rationally and logically" after the incident. (X, 100-123-124). In contrast, trial counsel never effectively used the statements in his closing argument, making only one short reference to the defendant's statement (Tr. X, 66) and failing to supply any explanation of the defendant's contradictory statements to officers Genduso and Lombardi.

The officers' observations as to the defendant's demeanor while making statements would be admissible on the "voluntariness" issue. More importantly, the defendant's extensive history of mental illness would also have been admissible. See Commonwealth v. Allen, 395 Mass. 448, 456-457 (1985); Eisen v. Picard, 452 F.2d 860, 863-864 (1st Cir. 1971). Both the defendant's expert, Dr. David Rosemarin and the Commonwealth's expert, Dr. Marc Whaley agreed that the defendant suffered from a major mental illness at the time of the assaults[3]. Moreover at the hearing on the motion for a new trial, two highly qualified psychologists, Dr. Paul A. Spiers and Dr. Allen Brown provided solid opinions that the defendant suffered from a major mental illness at the time of the assaults and that due to the mental illness he was unable to knowingly waive his Miranda rights and to make voluntary statements. (Dr. Spiers, MTr. 50-65) (Dr. Brown, MTr. IV, 266-273).

Moreover, it is not necessarily conclusive on the issue of "voluntariness" that he appeared "calm" to the police officers who questioned him. See Blackburn v. Alabama, 361 U.S. 199, 209 (1960). It should be noted that during the motion hearing, Dr. Spiers commented that the

---

[3] Although they reached opposite conclusions on the issue of criminal responsibility, Dr. Rosemarin characterized the defendant's illness as schzoaffective disorder (Tr. IX, 93-94-96-97) and Dr. Whaley's diagnosis was major depression with possible psychotic features. (Tr. IX-160-161).

-4-

"calmness" of the defendant was "characteristic of the time when he is actively psychotic" (MTr. I, 64-65) Dr. Brown concurred, stating that the calmness could be related to something "psychotic going on in his thinking". (MTr. IV, 307).

At such voir dire, Ms. Moore's observations of the defendant sitting in the bathroom drinking bleach after ingesting medication shortly before the police arrived (Tr. V, 105-108) would also have provided evidence of the defendant's severely diminished ability to make voluntary statements. Accordingly, there was substantial evidence that the defendant's statements were not the product of a "meaningful act of volition" or the "product of a rational intellect" and should have been suppressed. See Blackburn v. Alabama, 361 U.S. at 210; Commonwealth v. Allen, 395 Mass. at 456-457.

The Court concluded its justification for overlooking the trial judge's error by stating that the trial judge, "pursuant to our humane practice, instructed the jury that they must independently determine whether [the defendant's] statements were voluntary before considering them as evidence of guilt, thus mitigating any possible harm from judge's failure to hold a hearing". While such an instruction may have had some mitigating impact, it would only have diminished the prejudice to the defendant if it correctly stated the law. Here, the judge improperly instructed the jury on the manner in which they were to weigh the defendant's statements. In particular, the trial judge's instruction on voluntariness failed to inform the jury that the Commonwealth had the burden of proving the voluntariness of the defendant's statements beyond a reasonable doubt. Commonwealth v. Hunter, 416 Mass. 831, 834 (1994); Commonwealth v. Allen, 395 Mass. at 456- 457. The trial judge was further obligated to instruct the jury on specific factors it should consider in determining voluntariness. See Commonwealth v. Parker, 412 Mass. 353, 358 n.11

(1992) as well as advising them that they should consider the defendant's statements using a "the totality of the circumstances" analysis. See Commonwealth v. Blanchette, 409 Mass. 99, 108 n.4 (1991); Commonwealth v. Rodrigues, 425 Mass. 361, 369 (1997). The instruction on the "voluntariness" of the defendant's statements was therefore totally improper and totally deficient, and did not provide the jury with sufficient guidance as to the weight to give his statements. See Commonwealth v. Hunter, 416 Mass. at 834-835; Commonwealth v. Sheriff, 425 Mass. 186, 193 (1997). This Court in its opinion failed to rule on this claim of error.

It should also be noted that the Court limited its analysis to the defendant's statements to law enforcement officials after the incident. The Court acknowledged that statements made to private parties in the aftermath of their criminal conduct are subject to a "voluntariness hearing", citing Commonwealth v. Allen, 395 Mass. at 455, but ruled that statements made to civilians during the commission of the crime are not. The Court found that each statement made to the "private parties" (Ms. Hall and Ms. Moore) were made during the assaults and therefore did not require a hearing on the issue of "voluntariness". This is factually incorrect since a review of the testimony shows that the statements made to Ms. Hall and several statements to Ms. Moore were made _after_ the assaults were concluded[4].

The Court was correct in ruling that the trial judge had an obligation to conduct a voir dire on the issue of voluntariness even in the absence of a request by trial counsel. Commonwealth v. Brady, 380 Mass. 44, 49 (1980) quoting Commonwealth v. Harris, 371 Mass. 462, 470 (1976).

---

[4] Enid Hall's statement that the defendant told her over the telephone that Ms. Moore went to the laundromat appears to have been made after the incident had ended (Tr. V, 84; Tr. V, 200) as was the defendant's purported statements to Ms. Moore that it was "all her fault" (Tr. V, 82-83) and that he was "not going to jail", stated while he was in the bathroom drinking bleach. (Tr. V, 87, 157-158, 170).

However, the Court erred in excusing the trial judge's failure to conduct such a hearing. See Commonwealth v. Allen, 395 Mass. at 456-457. For the reasons outlined above, the failure to afford the defendant a voluntariness hearing resulted in a violation of the defendant's constitutionally-protected right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, Jackson v. Denno, 378 U.S. 368, 376-379 (1964); Blackburn v. Alabama, 361 U.S. at 205-208, as well as under the "humane practice" rule in this Commonwealth. Commonwealth v. Allen, 395 Mass. at 455.

### II.   Trial Counsel's Representation Constituted A Genuine Conflict Of Interest

This Court in rejecting the claim of ineffective assistance of counsel based on trial counsel's representation of, Dr. Kessler, the medical examiner in an unrelated civil case concluded that there was no "genuine conflict of interest" shown. The defendant disagrees and contends that the Court improperly focused on the nature of the testimony of the defendant's expert (i.e. the "single blow" theory) and ignored the "precise character" of the alleged conflict. See Commonwealth v. Davis, 376 Mass. 777, 781 (1978). It seemed to be requiring a showing of "actual prejudice or adverse impact on his counsel's performance" in order to establish a "genuine conflict of interest" which is contrary to the law as set forth in Commonwealth v. Pires, 389 Mass. 657, 660-661 (1983) and Commonwealth v. Hodge, 386. Mass. 165, 169 (1982).

The Court found Hodge to be distinguishable, stating that in that case the witness represented by trial counsel's firm was a "key witness" on a "critical issue" and added that the "important evidence" that could have presented by the defendant's expert, Dr. Ira Kanfer, was "in direct conflict with the law".

Had the Court focused on the "precise character" of the conflict it would have noted that Dr. Kessler was also a "key witness" on a "critical issue" and that his testimony was essential to the Commonwealth's burden of proving the elements of "extreme atrocity or cruelty" beyond a reasonable doubt. See Commonwealth v. Cuneen, 389 Mass. 216, 227 (1983)[5]. Dr. Kessler, like the Chief of Police in the Hodge case, called as a rebuttal witness, was not an inconsequential witness but a "key prosecution witness". See Commonwealth v. Hodge, 386 Mass. at 166-168. Similarly, the witness called in the Martinez case, who was represented by trial counsel on unrelated criminal charges, was a critical Commonwealth witness since he was one of two (2) prosecution witnesses who could place the defendant near the scene of the murder. Commonwealth v. Martinez, 425 Mass. 382, 385 (1997). The Court failed to distinguish or even mention Martinez, a case heavily relied upon by the defendant in support of his genuine conflict of interest argument.

In overlooking the clear "tension between the interests of one client of an attorney and those of another", this Court sanctioned representation[6] which was constrained by commitments to others in violation of his right to conflict-free counsel under the Sixth Amendment and Article 12 of the Massachusetts Declaration of Rights. See Commonwealth v. Pires, 389 Mass. at 660-662; Commonwealth v. Davis, 376 Mass. at 780-781.

---

[5] The importance of presenting a medical examiner to describe the extent of the victim's injuries and more importantly the cause of death is clear. See Commonwealth v. Azar, 435 Mass. 675, 689 (2002); Commonwealth v. Williams, 399 Mass. 60, 62-63 (1987). See Superior Court Criminal Practice Jury Instructions, (1999) Section 2.3, 2.11. (Tr. X, 60).

[6] The defendant again contends that this genuine conflict of interest was never effectively waived. See Commonwealth v. Jones, 403 Mass. 279, 281-284 n.2 (1988).

-8-

### III. Trial Judge's Failure To Hold A Contemporaneous Competency Hearing Sua Sponte Violated Defendant's Due Process Rights

In response to the defendant's contention that there should have been a competency hearing on the day the trial commenced, this Court found "no substantial question of possible doubt as to the defendant's competence" at trial. The Court noted that there had been a hearing on February 24th, a week before the trial commenced and that the defendant was found competent to stand trial at that time. (CTr. 34-35). Then relying on trial counsel's statement on the first day of trial[7], the Court concluded that "nothing had occurred within the past week to warrant a new inquiry". This reliance is misplaced.

Trial counsel's opinion of the defendant's competence or his failure to move for a competency hearing is not determinative of this issue and will not absolve the court from its responsibility to insure that the defendant was competent to stand trial. Pate v. Robinson, 383 U.S. 375, 385-386 (1966); Miles v. Stainer, 108 F.3rd 1109, 1113 (9th Cir. 1997); Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991).

There were certainly many reasons that such a hearing was necessary but this Court in its analysis overlooked them. Both Dr. Rosemarin (Tr. IX, 93-94) and Dr. Whaley (Tr. IX, 160-165; 199-200) agreed that the defendant had long-suffered from a major mental illness and these doctors as well as the Court were aware the defendant had been hospitalized at Bridgewater State Hospital several times after his arrest. (RA. 493-498; 509-510). This was made clear at the February 24th competency hearing by Dr. Marcus Goldman, a psychiatrist who treated him at the Worcester House of Correction after his arrest and prescribed the myriad of anti-psychotic and

---

[7]Trial counsel waived a previously-filed motion for competency hearing (RA. 24), saying that he was "unaware of any changes since last week". (Tr. I, 24-25)

-9-

other medications taken by the defendant while awaiting trial. (CTr. 10-15). In addition, the testimony of Christopher Cimino, a social worker at the Worcester House of Correction, made it clear that while awaiting trial, the defendant was having serious mental health problems i.e., the defendant attempted suicide twice and was held under suicide watch a total of thirty-two days. (Tr. VIII, 70, 82-84; IX, 44)(RA. 565-596).

Accordingly, notwithstanding the trial court's finding that the defendant was competent on February 24th (CTr. 46), there was a "substantial doubt" as to his competence based on his long history of psychiatric problems and bizarre behavior as shown in his mental health records (RA. 399-651), the opinions of Doctors Whaley and Rosemarin, the testimony of Dr. Goldman concerning his mental status as the trial approached, (CTr. 8-22) and Dr. Rosemarin's testimony that the defendant was delusional and paranoid during his contact with his defense attorneys as well as with him (Tr. VIII, 82-84). See Johnson v. Norton, 249 F.3rd at 26-27.

Here, the defendant went to trial, was convicted and sentenced while there was "substantial doubt" as to his competence to stand trial, which violates his constitutional rights of due process under the Fourteenth Amendment to the United States Constitution as well as under Article 12 of the Declaration of Rights of the Constitution of the Commonwealth. Commonwealth v. Hill, 375 Mass. 50, 54 (1978); Drope v. Missouri, 420 U.S. 162, 171 (1975).

Respectfully submitted
Henry K. Boateng
By His Attorney,


KENNETH G. LITTMAN

-10-