UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

No. 04-CV-10125-RWZ

**Daniel Yeboah-Sefah,**
**Petitioner**

v.

**Edward Ficco,**
**Respondent**

PETITIONER'S REPLY TO COMMONWEALTH'S
OPPOSITION TO HIS MEMORANDUM OF LAW

I.  THE DEFENDANT DID NOT MAKE A KNOWING, INTELLIGENT AND VOLUNTARY WAIVER OF HIS CONSTITUTIONAL RIGHT TO CONFLICT-FREE COUNSEL

In his memorandum of law, Mr. Boateng asserted that the Supreme Judicial Court's (SJC) decision that Mr. Boateng's waiver of his right to conflict-free counsel was knowing, intelligent and voluntary, Boateng, 438 Mass. at 510, was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings."  28 U.S.C. § 2254(d)(2).  Petitioner's Memorandum of Law in Support of His Petition for Habeas Corpus (Mem.) at 34.  He did not argue that the SJC's decision was contrary to or involved an unreasonable application of clearly established Federal law.  See 28 U.S.C. § 2254(d)(1).

1

Responding to Mr. Boateng's argument, the Commonwealth asserted that "all of the evidence in the record before the state courts tended to support their conclusion that Petitioner's waiver of any conflict of counsel regarding Doctor Kessler was intelligently and voluntarily made." Commonwealth's Memorandum of Law in Opposition to the Petition for Habeas Corpus (Opp.) at 16. Accordingly, the Commonwealth asserted that the SJC's factual determination was not unreasonable in violation of 28 U.S.C § 2254(d)(2). The Commonwealth did not address whether the SJC's decision involved an unreasonable application of clearly established Federal law.

Mr. Boateng maintains that the SJC's factual determinations were unreasonable. He must also add, however, that the SJC's analysis of the adequacy of the trial judge's colloquy was "contrary to or involved an unreasonable application of clearly established Federal law", and therefore violated 28 U.S.C. § 2254(d)(1).

In Von Moltke v. Gillies, 332 U.S. 708, 68 S. Ct. 316 (1948) (plurality opinion), the United States Supreme Court stated:

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused-whose life or liberty is at stake-is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the

2

>circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Id., 332 U.S. at 723-24 (footnotes and quotation marks omitted).

As a preliminary matter, despite the fact that Von Moltke was a plurality opinion, it constitutes "clearly established Federal law" on the issue of the court's obligation to insure that a waiver of counsel is knowing, intelligent and voluntary. The Eighth Circuit, in rejecting a claim to the contrary, has noted:

>the Supreme Court has cited Von Moltke in a number of subsequent cases. E.g. Penson v. Ohio, 488 U.S. 75, 86-87, 109 S. Ct. 346 (1988); Patterson v. Illinois, 487 U.S. 285, 298, 108 S. Ct. 2389 (1988). Our court has also had occasion to consider Von Moltke in the course of deciding cases. In Wilkins v. Bowersox, 145 F.3d 1006, 1013 n. 5 (8th Cir. 1998), we observed that in Von Moltke "the Supreme Court established the requirement that a judge's inquiry regarding waiver of counsel must be comprehensive and probing." Moreover, there are other Supreme Court precedents which clearly establish the knowing, voluntary, and intelligent rule. See Godinez [v. Moran, 509 U.S. 389,] 401 n. 12, 113 S. Ct. 2680 (1993); Faretta [v. California, 422 U.S. 806,] 835-36, 95 S. Ct. 2525 (1975); Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S. Ct. 236 (1942).

Shafer v. Bowersox, 329 F.3d 637, 651 (8th Cir. 2003).

A waiver ordinarily is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019 (1938). Whether there has been an intelligent waiver of a constitutional right must depend on the relevant facts and circumstances. Id.

Federal circuit courts have cited Von Moltke and Johnson as authority for the requirement that the trial judge conduct a "penetrating and comprehensive examination" of the defendant's waiver decision on the record before concluding that it is knowing, intelligent and voluntary. See Fowler v. Collins, 253 F.3d 244, 249 (6th Cir. 2001) (citing Von Moltke, 332 U.S. at 724, 68 S. Ct. 316 (plurality opinion)) ("To ensure that a defendant's waiver is made with eyes wide open, a judge must thoroughly investigate the circumstances under which the waiver is made."); Id. (citing Johnson, 304 U.S. at 465, 58 S. Ct. 1019) ("A trial court's determination as to the propriety of a waiver should appear on the record.").

A defendant's assertion "that he is informed of his right to counsel and desires to waive the right does not automatically end the trial judge's responsibility." Id. at 250, quoting Von Moltke, 332 U.S. at 724, 68 S. Ct. 316). "[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant

4

separate counsel." Wheat v. United States, 486 U.S. 153, 160, 108 S. Ct. 1692 (1988). Finally, a reviewing court "must indulge every reasonable presumption against waiver of an individual's fundamental constitutional rights." Fowler, 253 F.3d at 249 (citing Johnson, 304 U.S. at 464, 58 S. Ct. 1019).

In this case, the trial judge had been alerted to the fact that defense counsel represented the medical examiner in a separate civil matter. Furthermore, he had learned, during the competency hearing, that Mr. Boateng was being treated with a series of medications, including an anti-psychotic, a tranquilizer and two anti-depressants. The effects of these medications on Mr. Boateng were sufficiently serious for his attorney to be concerned that Mr. Boateng was not competent to assist in his own defense and to bring this matter to the trial court's attention.

Given this information, the trial judge had an obligation to conduct a "penetrating and comprehensive examination" of the defendant's waiver decision on the record before concluding that it was knowing, intelligent and voluntary. Von Moltke, 332 U.S. at 724, 68 S. Ct. 316. More specifically, the Supreme Court has stated that

> [t]o be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

5

Id. Building on this, the Fifth Circuit has explained that the judge should participate actively in the waiver decision, seeking

> to elicit a <u>narrative response</u> from [the] defendant that he has <u>been advised of his rights to effective representation</u>, that he understands the details of his attorney's conflict of interest <u>and the potential perils of such a conflict</u>, that he has discussed the matter with his attorney <u>or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections</u>.

<u>United States v. Garcia</u>, 517 F.2d 272, 278 (5th Cir. 1975); <u>United States v. Alberti</u>, 470 F.2d 878, 881-82 (2nd Cir. 1972). <u>See</u> <u>United States v. Donahue</u>, 560 F.2d 1039, 1043-44 (1st Cir. 1977) (where court is aware of potential conflict of interest, it should inquire of defendant whether he understands that he may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government)  The trial judge also should consider the background, experience, and conduct of the defendant. <u>Cf.</u> <u>Johnson</u>, 304 U.S. at 464, 58 S. Ct. 1019 (assessing defendant's background, experience, and conduct in determining, after the trial, whether a valid waiver of counsel was made).[1]

---

[1] Massachusetts case law generally tracks these requirements. <u>See</u> <u>Commonwealth v. Martinez</u>, 425 Mass. 382, 392, 681 N.E.2d 818 (1997) (judge must inform defendant of risks and potential dangers that can arise from proceeding with conflicted counsel and must obtain clear and unambiguous waiver of conflict); <u>Commonwealth v. Goldman</u>, 395 Mass. 495, 507-508, 480 N.E.2d 1023, <u>cert. denied</u>, 474 U.S. 906, 106 S. Ct. 236 (1985) (judge should elicit narrative responses and inform defendant of right to consult with independent counsel); <u>Commonwealth v.</u>

The trial judge did not satisfy these requirements. First, he did not conduct a "penetrating and comprehensive examination" of Mr. Boateng's decision to waive his right to conflict free counsel. Von Moltke, 332 U.S. at 724, 68 S. Ct. 316. He did not insure that Mr. Boateng had an "apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, [or] all other facts essential to a broad understanding of the whole matter." Id. He failed to elicit narrative responses from a defendant he knew to be suffering from a major mental illness for which he was heavily medicated. The defendant's responses to the court's inquiries were perfunctory at best and failed to shed any light

---

Jones, 403 Mass. 279, 281-284 n. 2, 526 N.E.2d 1288 (1988) (example of adequate colloquy). Finally, Massachusetts Rule of Professional Conduct 1.7(b), as amended, 430 Mass. 1301 (1999), addresses this issue as well. The rule states that:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single mater is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

on his "complex reasoning ability". <u>Miles v. Stainer</u>, 108 F.3d 1109, 1112 (9th Cir. 1997). In fact, the judge made no inquiry of Mr. Boateng or his trial counsel about the effect of Mr. Boateng's mental illness and heavily medicated-status on his comprehension during his conversations with trial counsel regarding the conflict of interest.

Second, the trial judge did not adequately inform Mr. Boateng of the "potential perils" of proceeding with conflicted counsel. <u>Garcia</u>, 517 F.2d at 278. Specifically, he did not discuss the possibility that counsel might be unwilling to challenge Dr. Kessler's opinion on the amount of force inflicted or his opinion that the cause of death was multiple traumas as opposed to a single blow. <u>See</u> <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1232-33 (9th Cir. 2001) (granting federal habeas relief because trial judge's colloquy concerning defendant's waiver of right to conflict free-counsel was inadequate - petitioner was not "made aware of any of the specific ramifications of his waiver.").

Finally, the trial judge neglected to inform Mr. Boateng that he had a constitutional right to an attorney who was free from divided loyalties. <u>See</u> <u>Donahue</u>, 560 F.2d at 1043-44. Likewise, the judge did not take steps to insure that Mr. Boateng understood that if he could not afford this, separate counsel could be retained on his behalf. <u>See</u> <u>id.</u>

The judge's failure to advise Mr. Boateng of his right to consult with conflict-free counsel was especially important in the specific context of this case. Trial counsel did not disclose his conflict until the eve of trial, at a time when Mr. Boateng must have been feeling intense psychological pressure, given that he was about to face capital murder charges and a potential sentence of life in prison without the possibility of parole. In these extremely stressful circumstances, no "normal" defendant - much less a mentally ill defendant taking multiple medications which had a sedating effect - could reasonably be expected to make an informed and rational decision on his own about the wisdom of abandoning his trial counsel. See Johnson, 304 U.S. at 464, 58 S. Ct. 1019 (court must consider defendant's background, experience, and conduct in determining whether waiver of counsel is valid).

Addressing the adequacy of the colloquy, the SJC stated, "[w]e are satisfied that any deficiency in the colloquy as it appears in the transcript was due less to the diligence of the judge in ensuring that the decision was knowing and voluntary than to the reticence of the defendant." Boateng, 438 Mass. at 510. The SJC did not identify any federal law defining the judge's obligations in the waiver inquiry. At best, by addressing the adequacy of the judge's colloquy, the SJC implicitly acknowledged that the judge had a federal

9

constitutional obligation to insure that the defendant's waiver of his right to conflict free counsel was knowing, intelligent and voluntary. Assuming the SJC accepted this proposition (as it had an obligation to do), Mr. Boateng submits that the SJC's analysis of the colloquy involved an unreasonable application of clearly established Federal law. See Fowler, 253 F.3d at 250 (granting federal habeas relief where state court's cursory inquiry into defendant's waiver of constitutional right to counsel was inadequate, and therefore amounted to unreasonable application of established Supreme Court precedent in violation of 28 U.S.C. § 2254(d)(1)).

The SJC's analysis of the adequacy of the colloquy was unreasonable. First, despite conceding that the colloquy did not elicit narrative responses and was less extensive than models it had approved previously, see Boateng, 438 Mass. at 510 (citing Jones, 403 Mass. at 281-284 n. 2, 526 N.E.2d 1288), the Court claimed that the colloquy was not inadequate. Id. The SJC blamed any inadequacy in the colloquy on Mr. Boateng's "reticence". However, the colloquy was flawed precisely because it did not elicit the narrative responses necessary to distinguish a merely "reticent" defendant from a defendant whose mental illness, medicated status and/or ignorance of the danger of proceeding with conflicted counsel prevents him from making a knowing, intelligent and voluntary waiver of his right to

10

conflict-free counsel. Indeed, relying on Von Moltke, the Sixth Circuit has explicitly held in a federal habeas case that a defendant's assertion "that he is informed of his right to counsel and desires to waive the right does not automatically end the trial judge's responsibility." Fowler, 253 F.3d at 250, (quoting Von Moltke, 332 U.S. at 724, 68 S. Ct. 316). Clearly, where the defendant's reticence in the face of a colloquy creates ambiguity as to whether his waiver is knowing, intelligent and voluntary, it is up to the judge to inquire further in order to resolve the ambiguity. Moreover, faced with ambiguity, a reviewing court "must indulge every reasonable presumption against waiver of an individual's fundamental constitutional rights." Fowler, 253 F.3d at 249 (citing Johnson, 304 U.S. at 464, 58 S. Ct. 1019). Because the colloquy here did not resolve the ambiguity about Mr. Boateng's waiver, it was not sufficiently "penetrating" or "comprehensive" to overcome the presumption against waiver of Mr. Boateng's fundamental constitutional right to representation by conflict-free counsel.

Second, whatever the significance of Mr. Boateng's "reticence", it was irrelevant to the trial judge's failure to insure that he was aware of the potential perils of proceeding with conflicted counsel. See Lockhart, 250 F.3d at 1232-33.

Third, Mr. Boateng's reticence was also irrelevant the trial judge's failure to inform him that he had a right to consult with

11

independent counsel and that if he could not afford such counsel, counsel could be secured for him.  See Donahue, 560 F.2d at 1043-44.

For all of these reasons, the SJC's conclusion that the colloquy was adequate to insure that Mr. Boateng's waiver of his right to conflict-free counsel was knowing, intelligent and voluntary, Boateng, 438 Mass. at 510, "involved an unreasonable application of clearly established Federal law."  28 U.S.C. § 2254(d)(1).

**II. THE DEFENDANT WAS DEPRIVED OF HIS FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL**

**D. Trial Counsel Failed to Solicit Expert Opinion That the Defendant's Mental Illness Prevented Him from Appreciating That He Had Acted with Extreme Atrocity or Cruelty in the Death of His Son**

According to the Commonwealth, Mr. Boateng concedes that this claim has been procedurally defaulted. Opp. at 21. The Commonwealth implies that this is the end of the matter. Id. The Commonwealth completely ignores Mr. Boateng's argument that he established cause for any procedural default (ineffective assistance of counsel) and prejudice arising from his claim. See Mem. at 37-38, 106. Moreover, the Commonwealth ignores Mr. Boateng's argument that because the Single Justice of the SJC failed to address his ineffective assistance claim, the state court decision is not entitled to any deference and this Court must review the matter de novo. Mem. at 107-108, citing Lynch v. Ficco, 438 F.3d 35, 44-45 (1st Cir. 2006).

Dated: March 6, 2007                    Respectfully Submitted,

/s/ Chauncey B. Wood
Chauncey B. Wood, BBO# 600354
Shea, LaRocque & Wood, LLP
47 3rd Street, Suite 201
Cambridge, MA 02141
Tel. (617) 577-8722

13

<u>Certificate of Service</u>

    I hereby certify that this document, which was filed on this date through the ECF system, will be sent electronically on this date to David Lieber, counsel for the Respondent in this matter, Edward Ficco.

| | |
|---|---|
| Date: March 6, 2007 | /s/ Chauncey B. Wood<br>Chauncey B. Wood |