## SHEA, LaROCQUE & WOOD, LLP

47 THIRD STREET, SUITE 201
CAMBRIDGE, MASSACHUSETTS 02141-1265

MARK W. SHEA
JEAN C. LaROCQUE
CHAUNCEY B. WOOD*
AUSTIN C. TZENG
KATHRYN H. BARNWELL

TEL 617.577.8722
FAX 617.577.7897
WWW.SLRW.NET

May 30, 2007

The Honorable Rya W. Zobel
United States Courthouse
One Courthouse Way
Boston, MA 02210

Re:   Yeboah-Sefah v. Ficco
      No. 04-CV-10125-RWZ

Dear Judge Zobel:

I write to bring to the Court's attention supplement authority - Commonwealth v. Miller, 68 Mass. App. Ct. 835 (May 4, 2007) - decided after the briefing in this case had been completed. Miller is relevant to two arguments presented in Mr. Yeboah-Sefah's memorandum of law.

First, Miller is relevant to Argument II(B)(2): trial counsel provided ineffective assistance because he failed to challenge the admissibility of the Petitioner's statements to Ms. Moore, Ms. Hall and the police on the grounds that the statements were involuntary. See Petitioner's Memorandum of Law (Mem.) at 76-90. More specifically, while the Supreme Judicial Court (SJC) did not address Mr. Yeboah-Sefah's ineffective assistance claim, it did provide arguments in support of its conclusion that trial counsel's failure to challenge the voluntariness of Mr. Yeboah-Sefah's statements was not prejudicial to Mr. Yeboah-Sefah. See Mem. at 86, quoting Commonwealth v. Boateng, 438 Mass. 498, 505-06 (2003). The SJC's final argument on this point was that "the judge, pursuant to our 'humane practice', e.g., Commonwealth v. Serino, 436 Mass. 408, 413, 765 N.E.2d 237 (2002), instructed the jury that they were to independently determine whether Boateng's statements were voluntary before considering them as evidence of guilt, thus mitigating any possible harm resulting from the judge's failure to hold a voluntariness hearing." Boateng, 438 Mas. at 506. In Miller, the Massachusetts Appeals Court held that a trial judge's failure to conduct a voluntariness hearing where the issue is fairly presented "is not cured by submitting the issue of voluntariness to the jury under the Massachusetts 'humane practice' doctrine." Miller, 68 Mass. App. Ct. at 842. The Appeals Court explained that the Federal Constitution entitles a defendant to a fair hearing before a judge on the issue of voluntariness before the confession may be admitted in evidence. See Miller, 68 Mass. App. Ct. at 835, n.1, quoting Jackson v. Denno, 378 U.S. 368, 378, 84 S. Ct. 1774 (1964) ("The Federal Constitution

of course requires that at some point in the proceedings, before a confession is admitted in evidence, the defendant must have a fair hearing and a reliable determination [by a judge] on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession.") (internal quotation marks omitted). The court noted that the Massachusetts humane practice instruction is not constitutionally mandated and thus is no substitute for the judicial determination of voluntariness. See Id. ("That the Massachusetts 'humane practice' operates to have the jury independently determine whether they are satisfied beyond a reasonable doubt that the confession or admission was a voluntary act is not a substitute for the Federal constitutional requirement that the trial judge make a determination of voluntariness as an initial matter before the jury hears the confession.") (emphasis in original).

Second, Miller is relevant to Argument IV: the SJC denied Mr. Yeboah-Sefah equal protection and due process of law by failing to grant relief for the trial judge's failure to hold a hearing to determine the voluntariness of Mr. Yeboah-Sefah's statements to Ms. Moore, Ms. Hall, and the police. See Mem. at 132-35. As Mr. Yeboah-Sefah explained in his memorandum, "because the trial judge's failure to hold a voluntariness hearing led to the admission of the statements, the resulting prejudice warranted relief. Compare Commonwealth v. Harris, 371 Mass. 462, 470-72, 358 N.E.2d 982 (1976) (reversing 1st degree murder conviction because admission of confession without preliminary sua sponte voluntariness determination created substantial risk of miscarriage of justice)." Mem. at 134. Mr. Yeboah-Sefah argued that the SJC's refusal to follow clear Massachusetts precedent on this point constituted a denial of equal protection and due process of law. See Mem. at 134, citing Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871 (1984); Barclay v. Florida, 463 U.S. 939, 957-58, 103 S. Ct. 3418 (1983) (plurality opinion). Miller provides yet another clear example of Massachusetts law on this point - where there is evidence that the defendant's statements were involuntary, the defendant is constitutionally entitled to a voir dire hearing where the Commonwealth must establish beyond a reasonable doubt that the statements were voluntary. See Miller, 68 Mass. App. Ct. at 841-42. If the trial court does not hold such a hearing and admits the statements, the failure to make a pretrial determination of voluntariness is reversible error, so long as the admission of the statement creates a substantial risk of a miscarriage of justice, as it did in Miller. See Id. at 843, n.4 (finding that the trial judge's failure to hold a voluntariness hearing created a substantial risk of a miscarriage of justice warranting reversal of conviction). Because the SJC failed to follow this clearly established Massachusetts law in Mr. Yeboah-Sefah's case, he was denied equal protection and due process of law under the fourteenth amendment to the federal Constitution.

Sincerely,

*Chauncey Wood*

Chauncey B. Wood

CBW/ps

cc:    AAG David M. Lieber
       Daniel Yeboah-Sefah