UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10125-RWZ

DANIEL YEBOAH-SEFAH

v.

EDWARD FICCO

MEMORANDUM OF DECISION AND ORDER

September 13, 2007

**ZOBEL, D.J.**

**I.     Introduction**

Petitioner Daniel Yeboah-Sefah,[1] a state prisoner, seeks habeas review of his state court conviction for first-degree murder of his five-week old son with extreme atrocity or cruelty pursuant to 28 U.S.C. § 2241 and § 2254.  He raises four grounds: (1) he did not make a "knowing, intelligent and voluntary waiver" of his constitutional right to "conflict-free counsel;" (2) he was deprived of the effective assistance of counsel; (3) his due process rights were violated when the trial judge failed to conduct a competency hearing on the day of trial; and (4) his equal protection and due process rights were violated when the Massachusetts Supreme Judicial Court ("SJC") denied his appeal from the trial judge's failure to hold a sua sponte voluntariness hearing regarding petitioner's pre-trial statements to third parties and the police.  For the

---

[1] Petitioner was known at the time of his conviction as Henry K. Boateng.  He is hereinafter referred to by the name under which he filed his habeas petition.

reasons discussed below, the petition is denied.

## II.    Factual and Procedural Background

In the fall of 1992, petitioner lived in Worcester, Massachusetts, with Alecia Moore ("Alecia") and their five-week-old son, Jameel Moore ("Jameel"). On October 25,1992, during the course of an altercation with Alecia, petitioner strangled, hit and kicked both her and his son. Jameel died as a result of his injuries. Once the police arrived, petitioner was read Miranda warnings and questioned. He admitted beating Alecia with his fists and knees and hitting the baby's head on the bedroom wall. Petitioner was charged with six offenses: first-degree murder in the death of his son; armed assault with intent to murder Alecia; two counts of assault and battery with a dangerous weapon on Alecia; assault and battery on Alecia; and kidnapping of Alecia. On December 9, 1992, petitioner was convicted on all charges except kidnapping, and sentenced to life imprisonment.

Petitioner filed a direct appeal, along with a motion for a new trial. The motion for a new trial was denied on September 19, 2000. See Commonwealth v. Boateng, No. 92-0656, 2000 WL 1481424 (Mass. Super. 2000). The appeals were then consolidated, and on January 21, 2003, the SJC affirmed petitioner's conviction on the charges of murder in the first degree, assault and battery by means of a dangerous weapon, assault by means of a dangerous weapon, and assault and battery. It reversed the conviction for armed assault with intent to murder and remanded to the trial court. See Commonwealth v. Boateng, 438 Mass. 498 (2003). A petition for rehearing by the SJC was denied on March 7, 2003.

Petitioner initially filed his habeas petition on January 21, 2004. (Docket # 1.)

2

He then sought to stay the federal proceedings so that he could review whether to file additional collateral proceedings in state court, conceding that he had failed to exhaust all of his claims in state court. (Docket # 2.) This court reserved ruling on the motion to stay pending a responsive pleading. (Electronic Order dated 1/26/04.) Respondent moved to dismiss petitioner's habeas petition on the ground that petitioner had not exhausted his state court claims. (Docket # 5.) Petitioner then renewed his motion to stay (Docket # 17) to allow him to exhaust his state court remedies, which this court allowed. (Electronic Order dated 6/28/04.) On May 5, 2006, his state court remedies were exhausted when the SJC denied petitioner's appeal from the denial of his motion for a new trial.

On May 31, 2006, petitioner filed an amended petition for habeas corpus (Docket # 22), along with a memorandum of law in support of his petition. (Docket # 29.) Respondent opposes the petition. (Docket # 40.)

### III.   Discussion

#### A.   Habeas Corpus Standard

As a state prisoner, petitioner's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1218-19 (1996). Under AEDPA, a federal court may grant relief to a state prisoner if the state court's "adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Olszewski v. Spencer, 466 F.3d 47, 53-54 (1st Cir. 2006) (citing

3

AEDPA, § 104, codifying 28 U.S.C. § 2254). Petitioner relies on substantially the same underlying facts to support his claims of ineffective assistance of counsel and constitutional error by the state court.

### B.     Petitioner's Waiver of Counsel's Conflict

First, petitioner contends that his counsel had a conflict of interest as a result of his representation of the state pathologist, Dr. Kessler, in an unrelated civil case, and that petitioner's in-court waiver of such conflict violated petitioner's constitutional rights. He further asserts that the trial court's colloquy was inadequate, and that the "combined effects of his mental illness and the four medications he was taking at the time of the conflict colloquy . . . caused him to become heavily sedated and confused" and thereby unable to effect a "knowing, intelligent and voluntary" waiver. (Docket # 29, Petr.'s Mem. in Supp. of Pet. for Writ of Habeas Corpus at 26.) The SJC rejected this claim:

> On learning of the dual representation, the trial judge conducted an inquiry of [petitioner] to determine whether his decision to continue with his trial counsel was intelligently made. The judge asked [petitioner] several questions in regards to the potential conflict, and received assurances that he found to be informed and adequate. While the colloquy, which is largely set forth in the margin, did not elicit the type of narrative responses from [petitioner] for which we expressed a preference in Commonwealth v. Goldman, 395 Mass. 495, 507-508, 480 N.E. 2d 1023, cert. denied, 474 U.S. 906, 106 S. Ct. 236, 88 L. Ed.2d 237 (1985), and was less extensive than the model we approved in Commonwealth v. Jones, 403 Mass. 279, 281-284 n.2, 526 N.E.2d 1288 (1988), this does not mean it was inadequate. We are satisfied that any deficiency in the colloquy as it appears in the transcript was due less to the diligence of the judge in ensuring that the decision was knowing and voluntary than to the reticence of the defendant. [Petitioner] knowingly and voluntarily assented to the dual representation.

Commonwealth v. Boateng, 438 Mass. 498, 509-510 (2003).

4

There is nothing in the record to suggest that the SJC's determination was unreasonable. Petitioner had previously discussed the conflict with his counsel. In addition, he had been found competent to stand trial five days before the colloquy. Moreover, he offers no evidence that taking the prescribed dose of four medications rendered him incompetent to consent to the representation by this counsel. Accordingly, the SJC's decision was neither an unreasonable determination of the facts nor contrary to clearly established Supreme Court law.

### C.   Ineffective Assistance of Counsel

Next, petitioner contends that he was denied the effective assistance of counsel. His complaints can be grouped into six categories: counsel (1) failed to provide petitioner with conflict-free representation; (2) failed to challenge the admissibility of pre-trial statements made to third parties and the police on the ground that such statements were not made voluntarily; (3) failed to call Dr. Spiers; (4) failed to elicit an opinion that petitioner's mental state deprived him of the ability to commit murder with extreme atrocity or cruelty; (5) failed to object to the jury instructions on the voluntariness of petitioner's statements; and (6) failed to request a new competency hearing.

To prevail on the instant habeas petition, petitioner must establish that in rejecting petitioner's ineffective assistance of counsel claim, the SJC "appl[ied] a standard that was contrary to clearly established federal law." Allison v. Ficco, 284 F. Supp. 2d 182, 189 (D. Mass. 2003).

In general, the federal constitutional standard for judging whether counsel was ineffective is that articulated in Strickland v. Washington, 466 U.S. 668, 688, 694

5

(1984), which requires petitioner to demonstrate "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

In evaluating the first prong of ineffective assistance claims under Strickland, "judicial scrutiny of counsel's performance must be highly deferential." Castillo v. Matesanz, 348 F.3d 1, 11 (1st Cir. 2003). "There is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689); accord United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000 ) ("[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance") (internal quotations marks omitted). Rather, "only if, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance can a finding of deficient performance ensue." Castillo, 348 F.3d at 11. In evaluating the second prong, courts have defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### 1. Failure to Provide Conflict-Free Representation

Under the standard delineated by the U.S. Supreme Court in Mickens v. Taylor, 535 U.S. 162, 168 (2002), there is an "automatic reversal rule" with respect to counsel's conflicts of interest, but "only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." Absent such situation, to prevail on a claim for ineffective assistance of

counsel due to counsel's conflict, petitioner must establish "that the conflict of interest adversely affected his counsel's performance." Id. at 174.

The SJC correctly addressed the matter as follows:

> [Petitioner] is similarly incorrect in his claim that the dual representation itself warrants a reversal of his convictions. The motion judge found that trial counsel's conflict of interest was only potential, not actual. We agree. While [petitioner] cites Commonwealth v. Hodge, 386 Mass. 165, 434 N.E. 2d 1246 (1982), for the proposition that simultaneous representation always creates an actual conflict, the nature of the conflict in this case is significantly different from that in the Hodge case. In that case, the witness represented by defense counsel's firm was a key witness against the defendant on a "critical issue" in the case, providing testimony so contrary to the defendant's story that before the witness was cross-examined the defendant gave evidence to his attorney showing that the witness was wrong and asked the attorney to present the evidence to the court, which the attorney refused to do. Id. at 166-167, 434 N.E.2d 1246. While [petitioner] asserts that similar circumstances are present here, and that trial counsel's representation of the medical examiner prevented him from presenting important evidence on [petitioner's] behalf, we disagree that the circumstances are similar and that the evidence to which [petitioner] now points would have assisted him.

Commonwealth v. Boateng, 438 Mass. 498, 510 (2003).

First, counsel's performance did not fall below any objective standard of reasonableness. The record shows that counsel rigorously cross-examined Dr. Kessler. Moreover, as the SJC pointed out, "many aspects of" the medical examiner's testimony supported the defense theory of insanity. Second, petitioner has not demonstrated the prejudice required under Strickland. Id., 466 U.S. at 688, 694. At the trial, petitioner defended on the ground that his actions were excused by his mental condition. His counsel requested and received funds for psychiatric and psychological experts. The case was submitted to the jury on two theories of first degree murder, premeditation and extreme atrocity or cruelty. The jury rendered its verdict on the latter

theory. Petitioner did not contest that he killed Jameel, but successfully defended against the charge of premeditation on the ground that he did not have the requisite mental capacity to commit premeditated murder. He further argues that absent the conflict, trial counsel would have shown that Jameel was killed by a single blow, thus negating the prosecution's theory of extreme atrocity or cruelty. The argument fails because the SJC held, as a matter of state law, that even a single blow, especially when directed against an infant, may support a finding of extreme atrocity or cruelty. Boateng, 438 Mass. at 511. Thus, it cannot be said that the SJC's determination was contrary to clearly established Supreme Court law or unreasonable.

### 2. Failure to Challenge the Admissibility of Pre-trial Statements on the Grounds that Such Statements Were Not Voluntary

Petitioner next contends that counsel was ineffective by failing to challenge the admissibility of petitioner's pre-trial statements to Alecia Moore, her mother, Ms. Hall, and the police. First, the decision not to object can be deemed to be reasonable strategy, as the statements were consistent with petitioner's insanity defense. Moreover, as discussed below (see Section III. E), the SJC concluded that such statements were not central to the case and therefore petitioner cannot demonstrate prejudice under Strickland.

### 3. Failure to Call Dr. Spiers

Petitioner also contends that trial counsel's failure to call neuropsychologist Dr. Paul Spiers as a witness rendered his representation constitutionally defective. The SJC rejected petitioner's claim and concluded that the decision not to call Dr. Spiers was the result of reasonable trial strategy. The SJC reasoned:

8

> Dr. Spiers, on the other hand, approached [petitioner's] illness from a completely different angle, the angle of a neuropsychologist rather than that of a psychiatrist.  A diagnosis of Epstein-Barr virus and seizures could certainly have confused a jury that had, until that point, heard fairly consistent testimony that Boateng suffered from a different serious medical condition.  Trial counsel, who had consulted with Dr. Spiers prior to trial, elected not to call him in an effort to avoid this confusion.  This decision was not a manifestly unreasonable tactical decision on trial counsel's part.  See Commonwealth v. Laurore, 437 Mass. 65, 76-77, 769 N.E.2d 725 (2002) (trial counsel who presents one expert medical witness not ineffective for refusing to call other expert whose conclusions were inconsistent and more speculative).  Also, while Dr. Spiers's testimony might have provided Boateng with a more complete defense in the sense that he was of the opinion that Boateng was not criminally responsible for either of the attacks on Jameel or [Alecia] Moore, it is unlikely that the jury, who rejected Boateng's insanity as a defense to the murder of Jameel, would have accepted it regarding the assault on Moore that occurred just before.

Commonwealth v. Boateng, 438 Mass. 498, 514 (2003).  The SJC's ruling, that counsel's judgment not to present testimony about two different mental conditions was a reasonable trial strategy, was itself entirely reasonable.

### 4. Failure to Elicit Opinion with Respect to Extreme Atrocity or Cruelty

Petitioner next argues that trial counsel was delinquent for failing to elicit testimony from the Commonwealth's expert, Dr. Marc Whaley, regarding extreme atrocity or cruelty elements of first-degree murder.  This is a variant of the argument in Section III.C.1 above and fails for the same reasons articulated there.

### 5. Failure to Object to the Jury Instructions on Voluntariness

Petitioner next contends that he received ineffective assistance when counsel failed to object to jury instructions regarding the voluntariness of petitioner's pre-trial statements to Alecia Moore and Ms. Hall.  As noted above (see Section III.C.2.), the decision not to object to the jury instructions can be considered reasonable strategy, as

9

the statements could be deemed to be consistent with petitioner's insanity defense. Moreover, as discussed below (see Section III. E), the SJC concluded that such statements were not central to the case and therefore petitioner cannot demonstrate prejudice under Strickland. The SJC's determination is therefore not contrary to clearly established Supreme Court law.

### 6.      Failure to Request a Second Competency Hearing

Finally, petitioner contends that his counsel's failure to request a second competency hearing on the day of trial renders his representation constitutionally defective. However, the trial court had conducted a competency hearing five days earlier and found petitioner to be competent and nothing in the record indicates that there was a change in petitioner's mental state during those five days.

### D.      Failure to Conduct a Contemporaneous Competency Hearing

Next, petitioner contends that the trial judge violated his due process rights by failing to conduct a competency hearing at the commencement of trial. The court had held an initial competency hearing on February 24, 1994, after which the court determined that petitioner was competent to stand trial. Petitioner contends that due to his long history of mental illness, the trial court was required to conduct a second competency hearing sua sponte when the trial commenced on March 1, 1994. The SJC rejected petitioner's argument, noting that:

> While the [trial] judge is sometimes required to conduct a sua sponte inquiry into a defendant's competence, see Commonwealth v. Hill, 375 Mass. 50, 54, 375 N.E. 2d 1168 (1978), that requirement arises only if there exists a "substantial question of possible doubt" as to that competence. Id., quoting Rhay v. White, 385 F.2d 883, 886 (9th Cir. 1967). On the first day of trial, trial counsel withdrew his previously filed motion for a competency hearing as moot, and informed the judge that

10

> nothing had occurred within the past week to warrant a new inquiry. In these circumstances there was no substantial question that required the judge's sua sponte action.

Commonwealth v. Boateng, 438 Mass. 498, 503-504 (2003).

Petitioner contends that nonetheless there was "sufficient doubt" as to his competency. On the first day of trial, trial counsel waived his motion for a competency hearing. The trial judge accepted such waiver, "unless someone tells me that there has been a change in circumstances." (Tr. 1:24-25.) Trial counsel responded: "I am unaware of any since last week." (Id. at 1:25.) In light of these circumstances, it cannot be said that the SJC's determination was contrary to clearly established Supreme Court law.

### E.  Failure to Hold a Sua Sponte Voluntariness Hearing Regarding Petitioner's Pre-trial Statements

Finally, as noted earlier, petitioner made statements pre-trial to Alecia Moore, Ms. Hall and the police, which were admitted at trial. He contends that his equal protection and due process rights were violated by the trial judge's failure to hold a sua sponte voluntariness hearing regarding these statements, and that the SJC erred when it denied petitioner's appeal.

In general, even when counsel does not seek to suppress pre-trial statements on voluntariness grounds, the trial judge has an obligation to raise the issue sua sponte where there is evidence of a substantial claim that the statements were involuntary. See, e.g., Commonwealth v. Brown, 449 Mass. 747, 765 (Mass. Aug. 29, 2007) ("the [trial] judge has a sua sponte obligation to conduct a voir dire only if the voluntariness of the statements is a live issue such that there is evidence of a substantial claim of

11

involuntariness") (internal quotation marks omitted); Commonwealth v. Tavares, 385 Mass. 140, 149-150 (1982) (court must consider voluntariness of pre-trial statements as well as confessions). Here, the SJC concluded that the rule applies to statements made to law enforcement and not to private parties. Accordingly, the failure to consider the voluntariness of petitioner's statements to Alecia Moore and her mother, Ms. Hall, was not error.

With respect to the statements made to the police, the SJC concluded that the court erred by not conducting a hearing with respect to those statements even though counsel did not request a voluntariness hearing or object to the failure to hold one. However, the SJC concluded that petitioner was not prejudiced thereby. Specifically, the SJC reasoned that there was no "substantial likelihood" of a miscarriage of justice since (1) the testimony of police as to petitioner's demeanor would have been admissible and probative, even if the specific statements had been excluded; (2) petitioner's statements would likely have been found voluntary in light of his "calm demeanor and lucid conversation;" (3) the statements "were not central to the case, which turned largely on Moore's description of [petitioner's] attacks;" and (4) the trial judge gave a "humane practice" instruction to the jury, directing them to "independently determine whether [petitioner's] statements were voluntary before considering them as evidence of guilt." Commonwealth v. Boateng, 438 Mass. 498, 505-506 (2003).

The SJC's decision was not contrary to clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**IV.   Conclusion**

For the reasons stated, the petition for writ of habeas corpus (Docket # 22) is DENIED.  Judgment may be entered dismissing the petition.


|  September 13, 2007  | |  /s/Rya W. Zobel  |
|---|---|---|
| DATE | | RYA W. ZOBEL |
| | | UNITED STATES DISTRICT JUDGE |